IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SHELTON WADE MONTGOMERY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:16-CV-52-D |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**

Petitioner SHELTON WADE MONTGOMERY has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his two-count conviction out of the 100th Judicial District Court of Carson County, Texas, for the felony offense of aggravated sexual assault of a child and the resultant twenty-year and twenty-five-year sentences. For the reasons set forth below, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
PROCEDURAL HISTORY

On May 10, 2011, petitioner was charged by indictment in Cause No. 4762 with two counts of aggravated sexual assault of a child. [ECF 10-1 at 7]. Petitioner entered a plea of not guilty to the offense; however, on February 1, 2012, after a trial, the jury found petitioner guilty

and sentenced him to twenty-year and twenty-five-year concurrent terms of imprisonment.  *See State v. Montgomery*, No. 4762.  [ECF 10-1 at 96, 98].

On October 22, 2013, the state intermediate appellate court affirmed petitioner's conviction on direct appeal.  *Montgomery v. State*, 415 S.W.3d 580, 582 (Tex. App.—Amarillo, pet. ref'd).  Petitioner filed a petition for discretionary review that the Texas Court of Criminal Appeals refused on February 5, 2014. *In re Montgomery*, PD-1633-13 (Tex. Crim. App. 2013).

Petitioner sought collateral review of his Carson County conviction by filing a state habeas corpus petition; on March 9, 2016, the Texas Court of Criminal Appeals (TCCA) denied petitioner's state habeas application without written order on findings of the trial court without hearing.  *In re Montgomery*, No. 83,375-01. [ECF 10-9].[1]

On March 11, 2016, petitioner's counsel filed the instant federal habeas petition; on June 1, 2016, respondent filed an answer.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States because trial court counsel failed to investigate and present mitigating evidence in the form of character witnesses and an expert witness at the punishment/sentencing phase of the trial.  [ECF 1 at 5].

## III.
## STANDARD OF REVIEW

In petitioner's application for relief and in respondent's answer, both parties thoroughly

---

[1] The TCCA remanded the initial habeas application to the trial court for findings of fact and conclusions of law (FF/CL) on June 24, 2015. [ECF 10-22]. The trial court entered such FF/CL by Order received at the TCCA on September 9, 2015. The Order stated, "The court, after reviewing the affidavit of defense counsel Paul Herrmann, finds that the representation of the defendant was not deficient. Any failure to call witnesses was a legitimate trial strategy choice." [ECF 10-10].

and accurately briefed statutory and case law regarding both the applicable standards of review under 28 U.S.C. §2254 proceedings and claims of ineffective assistance of counsel. [ECF 1 at 5-10; ECF 9 at 5-10]. The Court will not repeat these recitations regarding standards of review, except to acknowledge an ineffective assistance of counsel claim requires petitioner to show defense counsel's performance was both deficient and prejudicial under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 689 (1984). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, the court need not consider the other prong. *Id.* at 697. Moreover, when a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* 571 U.S. (2013).

IV.
MERITS

A. Ineffective Assistance of Counsel – Failure to Investigate and
Present Mitigating Evidence *i.e.* Character Witnesses and an Expert Witness

Petitioner alleges trial counsel failed to investigate and present character witnesses, including two former co-workers, during the punishment phase of trial, instead presenting only testimony from petitioner's parents. [ECF 1 at 5]. Petitioner also claims counsel failed to have petitioner evaluated by a sex offender treatment provider who would have testified as an expert that petitioner posed a minimal risk of recidivism. [ECF 5 at 19]. Petitioner argues it was the failure to investigate that constituted ineffective assistance because without such investigation, counsel was unable to have made a strategic decision to not present these witnesses. [ECF 5 at 12; ECF 11 at 2-3].

The Sixth Amendment requires counsel "to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. Even strategic choices made after a less than complete investigation are "reasonable" to the extent that reasonable professional judgments support the limitations on investigation. In determining the reasonableness of an attorney's investigation, this Court must directly assess a particular decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* The court must also consider not only the evidence already known to counsel, but additionally whether such evidence would lead reasonable counsel to investigate further. *Wiggins v. Smith,* 123 S.Ct. 2527, 2538 (2003). The reasonableness of an investigation depends in large part on the information supplied by the defendant. *See Ransom*, 126 F.3d at 123. Counsel should, at a minimum, interview potential witnesses and independently investigate the facts and circumstances of the case. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Even so, counsel is not required to investigate everyone mentioned by the defendant. *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985).

A defendant who alleges counsel was deficient for failing to investigate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Petitioner has presented affidavits from two former co-workers to support his argument related to character witnesses. The first affidavit, from Callie Beatty, states that if trial counsel had contacted her she would have testified,

> I have known Shelton since 2010. We met while we were both working at Tyson. We would talk regularly at work about our families and our shared military

> background. I knew Shelton to be a very hard working, nice, easy-going, work-oriented, and very dependable.

[ECF 10-19 at 30]. In the second affidavit, Jeremy Taylor says he was never contacted by trial counsel "although I made myself available to them on numerous occasions" and further states,

> Shelton Montgomery is my close friend. I have known Shelton since 2005 when we met at Tyson. We became very close and he was often around my family and myself. He had a large role in my life and my 8 year-old daughter's life and even after the allegations against Shelton arose I never once hesitated to let Shelton spend time with my family because of the person I know him to be. Shelton is dependable, honest, always willing to help others, and has a very good character. I expressed my willingness to get on the stand and share what I know about Shelton and about his role in my daughter's life but Shelton's attorneys prior to his conviction never gave me the chance.

[*Id.* at 31].

At the punishment phase of trial, defense counsel called petitioner's parents to testify. His mother, Marguerite Montgomery, testified that she and her husband adopted petitioner when he was two, that he is their only surviving child, that he played sports in junior high, that he never got into trouble at school, that he was "very kind" doing various things for his parents whenever asked, and that her husband has a life-threatening disease. [ECF 10-3 at 34-35]. She also testified that "Shelton is - - is the only one I have left now. I've lost everything else. If I don't have him, I don't know, as I get older, if my husband is still with me, that I can - - that we can take care of ourselves." *Id.* at 35. Petitioner's father, Ted Montgomery a former law enforcement officer, testified that petitioner was a normal young man growing up, that they fished and hunted together and that petitioner had taken care of him since he became ill. *Id.* at 36. Mr. Montgomery asked the jury to impose the minimum sentence. *Id.* The state did not cross-examine either witness.

Petitioner also testified and continued to maintain his innocence, stating upon being asked by the prosecution multiple times that the victim had lied about everything. *Id.* at 33. Petitioner

conceded he had been terminated from two law enforcement agencies – one relating to the theft of a gun, and one being his resignation from another law enforcement position due to allegations by a female inmate of "sexual wrongdoing." *Id.* at 32-33. Petitioner testified that he and the victim's mother had been married for eight (8) years at the time of trial, that he had continued to talk to the victim's mother until a month before trial, that he raised the victim and her brother as his own, attending school events when possible, and that he contributed financially to the family. *Id.* at 30-32.

> Defense counsel submitted an affidavit during state habeas review and testified,
>
> The defendant took the stand on his own behalf in the beginning of the punishment phase of the trial. He discussed his background, his school and work history. He also spoke of the job he did caring for the children in this case. The defendant maintained his innocence throughout. The defendant's mom and dad also testified at punishment. They presented themselves both as truthful and sympathetic. They testified about him being a good person, a good child and their need for him to be home to care for them in their old age. It is my opinion that they made such sympathetic witnesses the prosecutor chose not to cross examine them. I could have called other persons to testify about his good behavior, however, I'm not sure watering down the parents' testimony would not have been counterproductive.
>
> This case was basically a one witness case with the victim's testimony being the only real evidence against the defendant. I spoke to the defendant about how in a case like this the jury will struggle with finding someone guilty. Even so, I spoke to him that if they do find you guilty there are two ways to present yourself at punishment. One is to apologize and basically seek forgiveness and present evidence of how you will never do it again. The other is to maintain your Innocence and hope the jurors who struggled with finding you guilty will feel some responsibility themself (sic) and, therefore, be less inclined to be overly harsh on sentencing. The defendant always maintained his innocence and because of this I felt the latter method would be the most effective. I discussed this strategy with the defendant and he agreed.
>
> I feel putting on an expert, which clearly had been anticipated before trial to be necessary, to testify that the defendant has a low chance of recidivism would signal to the jury that their verdict was correct and that we anticipated it. Not to mention the fact that the prosecutor is entitled to cross-examine our expert. A sample cross could look something like this:
>
> Q.     So is the defendant a pedophile?

> A. No.
> Q. So he just molests children even though he has no real desire for them?
> A. (There are no good answers).
> Q. So you testified as to his low risk of recidivism?
> A. Yes.
> Q. When can you guarantee this jury that the defendant will never molest children again?
> A. When he is dead.
>
> In closing argument the prosecutor could hammer this point home telling the jury, "their own witness said the only time we will know the defendant won't molest a child is when he is dead. Therefore, I think the only choice you have a (sic) civilized people is that he is in prison until death."
>
> This is devastating testimony and use of testimony from the defendant's expert. Because of this I don't believe, and didn't believe at the time, such an expert to be helpful in this case.

[ECF 10-18 at 113-14].

In considering all of these affidavits, it appears to the Court that the purported testimony of petitioner's former co-worker Callie Beatty was mostly duplicative of other character testimony. The purported testimony of Jeremy Taylor was also duplicative, except possibly for the portion about petitioner's involvement with the witness's 8-year old daughter. Petitioner has not shown trial counsel's decision to not present character witnesses other than petitioner's parents was not strategic.

Petitioner also contends trial counsel failed to have an expert witness examine him to determine his likelihood of recidivism. As urged in his affidavit, trial counsel explained his reason for not calling an expert at trial, namely, that such expert would have been subject to cross-examination with potential devastating results *i.e.* potential testimony upon cross-examination that the doctor could not guarantee petitioner would not re-offend until he was deceased. [ECF 10-18].

Petitioner submitted the opinion of licensed forensic psychologist Timothy Proctor in the state habeas proceeding. [ECF 10-20 at 54-62]. The doctor's report contains the results of two general psychological tests not related to sex offense behavior that classified petitioner as "within normal limits." *Id*. at 59. The doctor then discussed several "Risk Assessment Measures" to address the presence of psychopathy, the likelihood of recidivism in general, and the risk of sex offense recidivism. *Id*. at 59-60. The doctor opined that these four assessments showed,

> In total, these results are not suggestive of the presence of psychopathy, which is a positive prognostic indicator with respect to his risk for general criminal offending as well as his risk for sexual offending.
> …
>
> When all available information is considered, [petitioner's] ratings on the [assessment] place him in the Medium risk/need range for general recidivism/violation of supervised release.
> …
>
> In total, the results of the [assessment] suggest a Low risk of sexual recidivism.
> …
>
> In total, the results of the [assessment] suggest a Low to Moderate risk of sex offense recidivism.

*Id*. at 60.

The doctor stated his Diagnostic Impressions were that petitioner had "Pedophillic Disorder, Nonexclusive Type, Sexually Attracted to Females" and that petitioner had "Antisocial Personality Traits." *Id*. at 61. In summation, the doctor testified that "[petitioner's] risk for criminal recidivism in general appears moderate, as does his risk for violating the terms of community supervision if provided the opportunity." *Id*. at 62. The doctor concluded that petitioner's "level of risk for sexual offense recidivism at present appears to fall in the low range." *Id.* The doctor further stated "In the normative sample that is most appropriate for

comparison, 2.8% of those with [petitioner's] score on this measure sexually reoffended at five years." *Id*. As stated *supra*, trial counsel explained, in the state habeas review, how the presentation of such an expert witness, subject to cross-examination, could result in testimony devastating to petitioner's defense. Trial counsel made a strategic decision to not call such an expert witness.

Petitioner is of the opinion that the investigation and presentation of these character and expert witnesses could have bolstered his mitigation defense to the extent the jury would have granted probation or, alternatively, that his sentences would have been less severe.[2] [ECF 5 at 18-19; ECF 11 at 2]. As stated *supra*, the TCCA denied petitioner's habeas application without written order on findings of the trial court without hearing. The trial court's findings of fact determined that counsel was not ineffective because his actions constituted trial strategy. Petitioner discusses at length in his brief that the failure to investigate translates to whether counsel made a strategic decision at all. [ECF 5 at 10-18 citing, *Wiggins v. Smith*, 539 U.S. 510, 523-26 (2003)(A reviewing court must consider the reasonableness of the investigation said to support counsel's strategic decision. An unreasonably incomplete investigation cannot result in a strategic decision].

As discussed above, counsel for petitioner must articulate "with specificity what the investigation would have revealed *and how it would have altered the outcome of the trial*." *Green*, 882 F.2d at 1003 (emphasis added). Counsel for petitioner argues that trial counsel's failure to consult with Callie Beatty or Jeremy Taylor constitutes a failure to investigate mitigating evidence in petitioner's case and further contends that the content of their affidavits, articulated above, discuss what the investigation would have revealed. However, counsel for

---

[2] At the time petitioner committed these for sexual abuse of a child offenses the punishment range was "five (5) years nor more than ninety-nine (99) years or life." [ECF 10-1 at 91].

petitioner has failed to specify how Beatty or Taylor's proffered testimony would have altered the sentence imposed. As set forth above, Beatty's testimony was duplicative of petitioner's parents' testimony, and Taylor's testimony really goes toward Taylor's belief in petitioner's innocence. At the punishment/sentencing phase of petitioner's trial, the jury had already determined guilt; thus, counsel for petitioner has not shown how the testimony of one or two individuals who continued to believe in petitioner's innocence would have led to a lesser sentence. Further, without such a showing, counsel for petitioner cannot demonstrate that the finding by the state habeas court that counsel's performance was not deficient was in error.

Additionally, although not mentioned in trial counsel's affidavit, if petitioner did present trial counsel with the names of Beatty and Taylor (thereby creating a need to investigate these witnesses), petitioner has not articulated whether he indicated to trial counsel that their testimony would have sufficiently differed from other punishment evidence. Because the reasonableness of defense counsel's investigation depends in large part on the information supplied by the defendant, it is the petitioner's burden to show what information he provided to counsel about Beatty or Taylor's knowledge that created a need to further investigate. *See Ransom*, 126 F.3d at 123. Based on the affidavits supplied by Beatty and Taylor, the petitioner cannot show that trial counsel's failure to contact these potential witnesses constituted deficient performance.

Although this Court does not find counsel for petitioner has shown trial counsel's performance was deficient in failing to investigate, this Court will, out of an abundance of caution, consider whether the failure to present the testimony in the affidavits above, or the failure to present expert testimony regarding recidivism, prejudiced the petitioner during the punishment phase of trial.

B. <u>Prejudice to Petitioner</u>

To prove prejudice a petitioner must show "there is a reasonable probability that, but for counsel's errors, the ultimate result of the proceeding would have been different" and that "counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 4. n. (5th Cir. 1993). Put another way, petitioner carries a heavy burden that requires a "substantial," and not just a "conceivable," likelihood of a different result. In addition to failing to show trial counsel committed any error, petitioner has not met this secondary burden.

Witness Callie Beatty's testimony that petitioner was "very hard working, nice, easy-going, work-oriented, and very dependable" [ECF 10-19 at 30] is mostly duplicative of the testimony offered at trial by petitioner's parents. As such, the Court disagrees with petitioner that this additional witness could have offered mitigating evidence that would have either entitled him to probation or lowered his sentences.

Witness Jeremy Taylor's testimony was also duplicative, except for the portion concerning the witness's young daughter. That portion of Jeremy Taylor's purported testimony goes to the guilt or innocence of petitioner. The victim in this case testified at trial and at punishment before the jury and never waivered in her account of what transpired with petitioner on the offense date at issue. [ECF 10-2 at 56-61; 63-70; ECF 10-3 at 27]. It is the sole province of the jury as the finder of fact to assess the credibility of the witnesses and to choose among reasonable constructions of the evidence. *See United States v. Green*, 180 F.3d 216, 220 (5th

Cir. 1999). A jury is not to be second-guessed by a reviewing court in its choice of which witnesses to believe. *See United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995). On federal habeas review, "[a] federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts." *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985). Moreover, "[t]he habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact." *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993).

During the trial of this case, multiple witnesses testified, including the victim [ECF 10-2 at 56-61; 63-70], her boyfriend, *Id*. at 70-72; a forensic interviewer from the Bridge Children's Advocacy Center, *Id*. at 72-76, 118-25; a sexual assault nurse examiner, *Id*. at 125-34; a City of Panhandle police officer, *Id*. at.135-43; a licensed marriage and family therapist, *Id*. at 144-47, 153-57; the victim's mother, *Id*. at 157-63; and a Department of Public Safety forensic scientist, *Id*. at 164-67. The jury was responsible for assessing the credibility of the various witnesses. In this case, the jury clearly believed the victim's account of the incidents charged and did not believe petitioner was innocent. Petitioner has not shown that the presentation of character witness Jeremy Taylor would have had a substantial likelihood of a different result because the jury would have been unlikely to credit such testimony after finding petitioner guilty. The jury entered punishment at twenty (20) and (25) years incarceration, making it unlikely that probation was an option. Additionally, contrary to petitioner's position, these sentences were at the low end of the punishment range. Although the minimum sentence was five (5) years, the jury, weighing all the evidence, opted for a higher sentence although it was not at the top of the punishment range.

Petitioner also contends the failure to investigate and present an expert witness who had examined petitioner to determine his likelihood of recidivism was prejudicial. As set out *supra*, petitioner presented the affidavit of licensed forensic psychologist Timothy Proctor in the state habeas proceeding. The doctor found that petitioner's risk for criminal recidivism in general was moderate and further that his level of risk for sexual offense recidivism fell within the low range. The doctor diagnosed petitioner to have a pedophilic disorder, as well as antisocial personality traits. Petitioner has not shown that this report and the doctor's findings rise to the level needed to show a substantial likelihood that the result would have been different. While the report characterized petitioner's risk of recidivism as moderate to low, this fact does not substantially prove the jury would have considered the report to the extent it would have granted probation or the minimum five (5) year sentence. Because petitioner has failed to show prejudice, the undersigned recommends that his claim of ineffective assistance of counsel be denied.

## V.
## AEDPA Relitigation Bar

Finally, this Court recognizes the state habeas court considered petitioner's claims raised herein and denied relief. In order to grant federal habeas corpus relief, a petitioner must demonstrate, and this Court must find, the state court determination of the facts was unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2). Where applicable, the state court's findings of fact "are 'presumed to be correct' unless the habeas petitioner rebuts the presumption through 'clear and convincing evidence.'" *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006), quoting 28 U.S.C. § 2254(e)(1). This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted). In determining whether the state court decision was unreasonable, this Court must be careful not

to substitute its judgment for that of the state court. In other words, a determination that the state court reached the wrong result or that the state court decision was incorrect, is insufficient. Denial of relief based on a factual determination will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

Alternatively, in order to grant relief, a petitioner must demonstrate, and this Court must find, the state court decision resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1). The state court's application of the law must be "objectively unreasonable," not "merely erroneous" or "incorrect." *Cobb v. Thaler*, 682 F.3d 364 (5th Cir. 2012). The AEDPA standard is met only in cases where there is <u>no possibility</u> a fair-minded jurist could disagree that the state court's decision conflicts with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011).

Petitioner has not met his burden under the AEDPA; based on the record in the state habeas proceedings, there does appear to be a reasonable basis for the state court's decision in petitioner's case. The relitigation bar of section 2254(d) forecloses relief to petitioner in this federal habeas proceeding.

## VI.
## RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States Senior District Judge that the petition for a writ of habeas corpus filed by petitioner SHELTON WADE MONTGOMERY be DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 8, 2018.

*(signature)*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).